# COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983

ROBY, KEVIN, G., CDC# D-93298
P.O. Box 7500 (A2-206-PBSP)
Crescent City, CA 95532
Pro Se

E-filing

555 new)

**FILED**
FEB 2 5 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

JF

KEVIN ROBY,

    PLAINTIFF,

      VS.

COURT LIAISON SGT. T. STEWART, LT. K. COOKE,
CCI S. TRUJILLO, CAPT. S. WHEELER, CC.II T.
LUCARELLI, CC.II D. BRADBURY, CC.II S. O'DELL,
WARDEN ROBERT HOREL, DISTRICT ATTORNEY
MICHAEL RIESE,

    DEFENDANTS.

CV 08 Case No. _____ 1113 (PR)

COMPLAINT UNDER THE CIVIL
RIGHTS ACT, 42 U.S.C §§ 1983
AND STATE TORT CLAIMS ACT

## I.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

A.   Place of present confinement is Pelican Bay State Prison (PBSP).

B.   There is a grievance procedure at this institution.

C.   The plaintiff has in goodfaith presented the facts in this complaint for review through the grievance procedure.

D.   The appeal numbers and the dates and results of the appeals at each level of review are as follows:

    1. Issue; **Malicious endangerment of plaintiff with deliberate indifference**,

Plaintiff was unable to exhaust administrative remedies for injunctive relief, on August 7, 2005 plaintiff filed 602 appeal to have falsified 128-G of February 20, 2003 be fixed so Custody would stop trying to force him into a life threatening housing situation. Plaintiff is a Satanist and Custody Kept trying to house him with hard core Christians. On August 24, 2005 plaintiff was forced to house with such a Christian and on September 4, 2005 plaintiff was attacked in the cell by this inmate and had to fight for his **life**. Plaintiff was then re-housed in administrative segregation where on September 18, 2005 he received the **Informal Level** response which was: Your issues of concern will be brought up at your annual review. The issue of damages in this matter although a futile endeavor was attempted but appeal was rejected for submission for being untimely.

2. Issue; <u>Unreasonable Seizure of Personal Property and Conversion</u>, appeal # P-07-00546 for injunctive relief to have property returned was filed March 4, 2007, **Informal Level** bypassed. At **First Level** interview on April 9, 2007 plaintiff was told by the Security Squad Sergeant that pursuing this matter through a 602 was a waste of time because the property was being held on order of the Del Norte District Attorney, so plaintiff needed to withdraw the 602 and direct his efforts at the DA. The plaintiff did as he was instructed but the DA never responded to any of his letters. So on July 26, 2007 plaintiff filed a habeas corpus to seek judicial intervention. On September 27, 2007 habeas corpus was denied for failure to exhaust remedies. On October 29, 2007 plaintiff tried to re-submit the 602 to **Second Level** for being misled by prison officials us reasoning for being late and recant of withdrawal. The appeal was rejected stating plaintiff would not be allowed to continue the 602 process.

3. Issue; <u>**False Imprisonment, Wrongful detainment in administrative segregation,**</u> appeal # P-07-01135 for injunctive relief to be released from Ad-Seg was filed on April 22, 2007. At **First Level** interview on May 22, 2007 plaintiff was told by Correctional Counselor II O'Dell, that he could not be transferred out of Ad-Seg because the Del Norte District Attorney had filed a "do not transfer" detainer

2.

1  on him so a 602 appeal would be of no use and that he needed to withdraw the 602 and
2  pursue the matter through the courts. On June 5, 2007 plaintiff received notice from the Del
3  Norte Superior Court (having filed a motion to dismiss for failure to prosecute) that it had no
4  filings on Roby. On June 10, 2007 Roby believing he had been misled by prison officials of
5  there being a DA detainer re-submitted his appeal to **Second Level**. On July 10, 2007 the
6  appeal was denied, again claiming DA 'do not transfer' detainer. Roby having to assume
7  the DA must have filed a detainer without the courts knowledge, added this issue to his
8  habeas corpus, which was also denied for failure to exhaust remedies on September 27,
9  2007. On October 29, 2007 plaintiff submitted a copy of his 602 to the **Third Level**
10 because original with other original exhibits came up missing from his cell. Plaintiff
11 subsequently was released from Ad-Seg on December 12, 2007.

12 **E.**  **Yes**, the plaintiff in the above cases appealed to the highest level he was allowed to pursue.

13

14 ## II.

15 ## PARTIES

16 **A.** Plaintiff Kevin Roby, CDC# D-93298 is a prisoner of the state of California,
17 presently incarcerated at Pelican Bay State Prison (PBSP).

18 **B.** Defendant Sergeant T. Stewart, Court Liaison at PBSP. **2.** Defendant Lieutenant K. Cooke,
19 Psychiatric Security Unit (PSU) Program Lieutenant at PBSP. **3.** Defendant Correctional Counselor I **S.**
20 Trujillo, Counselor for 7 Block at PBSP. **4.** Defendant Correctional Counselor II T. Lucarelli,
21 Counselor Supervisor for B Facility at PBSP. **5.** Defendant Captain S. Wheeler, Program Administra-
22 tor for B Facility at PBSP. **6.** Defendant CC II/Captain D. Bradbury, PSU Program Administrator
23 at PBSP. **7.** Defendant Correctional Counselor II S. O'Dell, Counselor of PSU 2 Block at PBSP. **8.**
24 Defendant Warden Robert Horel, Warden of PBSP. **9.** Defendant Michael Riese, District Attorney
25 Del Norte County.

26 **C.** At all times mentioned in this complaint, each individual defendant was acting under
27 color of state law. **2.** At all times mentioned in this complaint, each individual defendant was acting
28 in their official capacity and in the scope and course of their employment. **3.** **All** of the

1 | defendants, and each of them, are also sued in their individual capacities for the claims
2 | alleged in this complaint.
3 |
4 |                              ## III.
5 |                        ## STATEMENT OF CLAIM
6 |     Plaintiff Kevin Roby is a practicing Satanist and has had many problems celling with Christians
7 | and was put on single cell status at CSP-Sac. Roby was transferred to Pelican Bay State
8 | Prison (PBSP) and on August 22, 2001 he was seen by the Institutional Classification
9 | Committee (ICC) for his initial classification at PBSP. There, prison officials terminated Roby's
10 | single cell status. On August 22, 2001 Roby filed a 602 appeal that was partially granted at the
11 | First Level, stating "If a health clinician's evaluation recommends single cell status you will
12 | be scheduled for UCC for application of the "S" (Single cell) suffix.
13 |     On May 22, 2002 health clinician T. Fishback M.D. recommended Roby be single cell or
14 | housed only with another known Satanist. And Roby was again put on single cell status. On November
15 | 17, 2002 CCII T. Lucarelli taking offense the word "Satanist" being on the Chrono, terminated
16 | Roby's single cell status. On November 20, 2002 Roby filed a 602 appeal to get his single Cell
17 | status restored. On February 5, 2003 a Modification Order was issued at the Second Level for Roby
18 | to be taken to UCC to determine appropriate cell designation to include consideration of (health
19 | Clinician's) May 22, 2002 Chrono.
20 |     On February 20, 2003 Roby went before UCC and Captain S. Wheeler informed Roby he was only
21 | accommodating him because he was ordered to (Roby connected Wheeler's statement with a
22 | statement CCII T. Lucarelli made on December 28, 2002 at the First Level interview. After Roby having
23 | explained the volatile problems he has living with Christian inmates, Lucarelli stated "If you don't want
24 | to have problems with Christian cellies then you need to change your religion because Pelican Bay will
25 | never accommodate the needs of a Satanist). It was agreed at the committee that Roby would be
26 | housed only with another Satanist. But on the 128-G chrono of that committee which Roby was
27 | not allowed to see until August 6, 2005, Captain Wheeler and CCI S. Trujillo knowingly
28 | falsified statements by Roby on the 128-G, writing Roby stated "He never wanted to be singled

4.

1   cell" and wanted to be housed with anyone.

2       On August 7, 2005 Roby filed a 602 appeal for this malicious act to be corrected before he
3   was put in harms way. Appeals Coordinator D. Bradbury writes he sent the 602 back on August
4   19, 2005 but Roby did not receive it until August 24, 2005 stating it first needed to be sent to
5   his assigned CC I. Roby did so, but on August 25, 2005 Roby was forced to house with inmate
6   Avery a devout, fanatic of a Christian that was determine to convert Roby to Christianity.
7   CC I Trujillo did nothing to help Roby. On September 4, 2005 Roby attempted to do an evening
8   meditative prayer and Avery in an effort to prevent Roby from praying ultimately attacked Roby,
9   and in a fight for his life Roby survived and Avery succumbed to an internal nose bleed.

10      On September 6, 2005 all of Roby's personal property was seized by the Security Squad at
11  PBSP. In October of 2005 Roby was informed by PSU property officer Shellabarger that the
12  Security Squad was holding his property and would not release it until his pending case was
13  resolved. On February 27, 2007 after seventeen (17) months of waiting for the District Attorney
14  (DA) to resolve the perpetually pending charge, Roby wrote a Request for Interview (GA-22)
15  to the Security Squad to inquire into how he could get his property released. On March 4, 2007
16  Roby filed a 602 appeal to get his property back on the grounds that none of the property has
17  any evidentiary connection with the pending charge.

18      On March 6, 2007 the GA-22 of February 27, 2007 was answered by Court Liaison Sgt.
19  Stewart, stating: Until the DA makes a determination to prosecute or not -- the property
20  will be held. Roby then wrote Sgt. Stewart to inquire into appropriate way to get his property
21  released. Stewart responded indicating that a 602 would be futile endeavor and to direct his
22  enquires to the DA. On April 9, 2007 the Security Squad Sergeant came to interview Roby about his
23  602, where he reiterated what Roby was told by Sgt. Stewart, and stating they were ordered by
24  the DA to hold the property, so there was nothing they could do.

25      Roby has since discovered that the Del Norte District Attorney has never ordered
26  his property to be lawfully held, but has allowed PBSP to continue this malicious deception to
27  deprive Roby of his property. In an interview with Thomas Golianopoulos of KING magazine
28  (November 2007 issue). District Attorney Michael Riese all but admits his conspiratorial

1  partnership with PBSP to inflict an unlawful amount of suffering upon Roby when he
2  responds to a question by Golianopoulos, saying: "I want the guy (Roby) to get punished for
3  what he did, but it's ironic that once I file, he'll get better treatment than the average
4  prisoner." Thus, does he admit by not filing he's making Roby receive worse treatment
5  than the average prisoner, which makes the DA a party in PBSP's unlawful treatment of
6  Plaintiff.

7     This treatment also includes Roby's wrongful detention in administrative segregation after
8  the expiration of his SHU term on April 21, 2007. On March 9, 2007 Roby was issued a 114-D
9  Lock-up Order, stating that he could not be released from ASU to PBSP IV because of security
10  concerns, and that he could not be transferred to another prison because of a DA "do not
11  transfer" detainer had been issue. On March 14, 2007 Roby went before UCC and during this
12  committee Captain D. Bradbury and CCII O'Dell expounded on the information on the 114-D, stating
13  that Roby could not be released into PBSP's general population because the Christians there now
14  presented a security risk for him, and that the Del Norte District Attorney had filed a "do not
15  transfer" detainer on him so he would have to be retained in ASU until the DA decided to
16  prosecute or not.

17     Roby has since discovered that the District Attorney has never filed a detainer of any kind on
18  him and the document CCII O'Dell produced as proof of such a detainer was generated by Sgt. Stewart
19  to deceive and mislead Roby, and that the DA knowingly and willfully enabled his co-defendants
20  to continue this fraudulent deception to indefinitely retain Roby in ASU, until December 5, 2007
21  when Roby presented the article out of KING magazine (where the DA admits he is keeping Roby's
22  case perpetually pending for malicious reasons) to Warden Horel at his 90 day Ad-Seg Review.
23  Warden Horel no longer able to maintain this farce of having lawful authority to detain Roby, allowed
24  Roby to be put up for transfer. On December 12, 2007 Roby was taken back to ICC and
25  released to PBSP's general population.                        #G569658
26     On August 25, 2007 Roby sent in a **Government Claims Board** claim to protect his right
27  to sue under California state law as well. On December 27, 2007 Roby received notice that the
28  Board rejected his claim and he had six (6) months to file a court action on this claim.

### FIRST CLAIM FOR RELIEF
Violation of Prisoner's Eighth Amendment Right
to Have Personal Safety

Defendants Captain Wheeler, CCII Lucarelli and CCI Trujillo violated Roby's Eighth Amendment right to be reasonably protected from violence, when they conspired and/or falsified state document that was used to force Roby to house with an inmate that was violently opposed to Roby's religious beliefs. Which ended with Roby having to fight for his life, causing him physical injury and severe psychological and emotional distress.

Specifically, defendants knowingly, maliciously and sadistically with deliberate indifference orchestrated this volatile housing assignment to inflict physical, emotional and mental distress upon Roby through a third party, when they falsified the 128-G of February 20, 2003 that allowed Custody on August 24, 2005 to force Roby to take inmate Avery (a known fanatical Christian) as a cellmate. Their efforts to cause Roby harm because of his religious beliefs dates back to the termination of his single cell status on November 17, 2002 by CCII Lucarelli, and culminating with the falsification of his 128-G of February 20, 2003 by Capt. Wheeler and CCI Trujillo, and then by CCI Trujillo doing nothing to help Roby when the volatile housing assignment of August 24, 2005 was brought to his attention. As a direct and proximate result of these defendants' actions herein alleged, Roby suffered physical injury, and continues to suffer severe emotional and psychological distress. Roby is entitled to an award of compensatory and punitive damages for injuries.

### SECOND CLAIM FOR RELIEF
Violation of Prisoner's First and Eighth Amendment
Rights to be Free of Religious Persecution

Defendants Capt. Wheeler, CCII Lucarelli and CCI Trujillo violated Roby's First and Eighth Amendment rights to be free of religious hate crimes, when they conspired to force Roby to house with fanatical Christian, knowing inmate Avery's intense Christian beliefs would not tolerate Roby practicing his religion, thus putting Roby's life in danger because of his Satanic religious beliefs

7.

1     Defendants knowingly, willfully and with malice aforethought intended through a third party
2 to cause harm to Roby because of his religious beliefs. On November 17, 2002 CC II Lucarelli
3 terminated Roby's single cell status, taking offense to the word "Satanist" being on the chrono of May
4 22, 2002. On December 28, 2002 at the First Level interview for appeal # B-02-03309, CC II
5 Lucarelli further showed her animus towards Roby because of his religious beliefs, when
6 she flippantly responded to Roby's explaination of the problems he's had in the past with
7 living with Christians, she stated "If you want to stop having problems with Christian
8 cellies than you need to change your religion, because Pelican Bay will never accommodate the
9 needs of a Satanist."
10     And on February 20, 2003 at the Modification ordered UCC hearing for the above
11 mentioned appeal, Capt. Wheeler made similar statements to Roby, stating; he'd love to have a
12 talk with Roby in the woods about his Satanic beliefs, with no one else around. Roby took
13 this as a threat but said nothing because before this bigoted threat, Capt. Wheeler had
14 stated he was ordered to accommodate Roby, stating; "I'm only accommodating you because I
15 was ordered to." So Roby said nothing only wanting his housing problem fixed. Capt. Wheeler
16 and CC I Trujillo both assured Roby he would only be housed with another Satanist as it said on
17 the psychiatric chrono of May 22, 2002. But the defendants falsified the 128-G of that hearing
18 making it seem like Roby never wanted to be single celled and wanted to be housed with anyone.
19 Then when Roby was **forced** into a life threatening housing situation with inmate Avery in August of
20 2005, they did nothing, ignoring Roby's desperate plea for help. As a direct and proximate result of
21 these defendants' actions herein alleged, Roby suffered physical injury, and continues to suffer
22 severe emotional and psychological distress. Roby is entitled to an award of compensatory and
23 punitive damages for injuries.
24
25       **THIRD CLAIM FOR RELIEF**
     Violation of Prisoner's Fourth Amendment Right to be
26      Free of Unreasonable Seizure of Personal Property
27
28 Defendants Warden Robert Horel, Sergeant T. Stewart, and Del Norte District Attorney

8.

1   Michael Riese violated Roby's Fourth Amendment right to be free of unreasonable seizure, when
2   they conspired to unlawfully deprive him of all of his personal property indefinitely with no end in sight,
3   thus, continuing their unlawfull persecution of Roby.
4         Defendants knowingly and willfully under the pretense of having legal authority unlawfully deprived
5   Roby of his possessory interest in his property. Depriving him of its personal, sentimental and the sensory
6   stimulus his entertainment appliances afforded him from languishing idly in his cell on average 23
7   hours a day, causing Roby severe stress, anxiety and mental anguish from the continual attempts
8   by defendants to find ways to cause him suffering just because of his religious beliefs. On
9   September 6, 2005 all of Roby's personal property was seized from his cell and placed in the
10  Security Squad Complex. And in October of 2005 Roby asked PSU Property Officer Shellabarger
11  why he had not been issued his property, and was told that the Security Squad had it and would not
12  release it until the DA chose to prosecute or not. On March 4, 2007 Roby filed a 602 appeal to have
13  his property returned for unreasonable seizure. At the First Level interview, Roby was told by
14  Security Squad Sergeant that his property was being held by order of the DA so he needed to
15  withdraw his 602 and direct his attention at the DA.
16        Roby has since discovered that the District Attorney has never issued an order to seize and
17  hold Roby's personal property, but District Attorney Michael Riese did knowingly and willfully enable
18  PBSP to continue this malicious deception by refusing to respond to Roby's letters asking for
19  acknowledgment or denial of such an order to seize all of his personal property, and by keeping
20  Roby's pending case perpetually pending so Sergeant T. Stewart (acting on the authority of Warden
21  Horel) could maintain this delusive theory that this gives them lawful authority to indefinitely deprive
22  Roby of his property. Michael Riese admits in an interview with Thomas Golianopoulos of KING magazine
23  (November 2007 issue), that his willful act to abuse the legal process in this manner is to inflict harm
24  upon Roby. And as a direct and proximate result of these defendants' actions here in alleged, Roby
25  suffered, continues to suffer severe emotional and psychological distress and mental anguish over
26  the wrongful conversion of his personal property. Roby is entitled to an award of compensatory
27  and punitive damages for injuries.
28        Roby is entitled to injunctive relief, including, but not limited to, an order requiring his

his personal property be returned to him, and that he be transferred away from PBSP, where he will not be subjected to their continual efforts to cause him harm and/or further retaliation by any of the defendants. There is no adequate remedy at law to protect Roby from said retaliation and persecution, and without the equitable relief sought he is susceptible to great and irreparable psychological injury.

### FOURTH CLAIM FOR RELIEF
Violation of Prisoners' Fourth Amendment Right to be Free
of Unreasonable Detainment in Administrative Segergation

Defendants Warden Robert Horel, CC II/Capt. D. Bradbury, CC II S. O'Dell, and Distrist Attorney Michael Riese violated Roby's Fourth Amendment right to be free from the wrongful deprivation of his liberty interest, when they conspired to unlawfully detain Roby indefinitely in administrative Seger-gation. Defendants knowingly and willfully under the pretense of having legal authority unlawfully deprived Roby of his liberty interest to be free from Ad-Seg. Specifically, defendants claimed on the March 9, 2007 114-D "Lock-up Order" and at the March 14, 2007 committee hearing for the 3-9-07 Lock-up Order, that Roby could not be released out of ASU to PBSP IV due to he was now deemed to have safty concerns there, and he could not be transferred out of ASU to another prison because the Del Norte District Attorney had filed a "do not transfer" detainer on him.

Roby has since discovered that Distrist Attorney Michael Riese has never issued a detainer of any kind on him, but Michael Riese did knowingly and willfully enable his co-conspir-ators, defendants Warden Robert Horel, Captain D. Bradbury and CC II S.O'Dell to maintain this malicious deception by refusing to respond to Roby's letters asking for acknowledgment or denial of such a detainer, and by keeping Roby's pending case perpetually pending -- allowing the defendants to fraudulently attempt to detain Roby indefinitely in ASU, causing him the intentional infliction of emotional distress knowing even the District Attorney was assisting PBSP to continue their malicious, un relenting persecution of Roby because of his religious beliefs. But this malicious scheme to unlawfully hold Roby in ASU indefinitely, came to a fortuitous end

10.

1  On December 5, 2007 when Roby presented defendant Warden Horel with the article from KING
2  magazine where defendant Michael Riese blunders and admits he is abusing the legal process to
3  cause Roby harm. Warden Horel realizing this part of their unrelenting, tormentive assualt
4  upon Roby was over, allowed Roby to be put up for transfer.
5      But Roby soon found their arduous efforts to inflict psychological harm upon him was still
6  intent. On December 12, 2007 defendant Warden Horel changed his mind on allowing Roby to transfer away
7  from PBSP, and had him brought back to committee and released to PBSP IV in complete contradiction
8  to their reasoning for holding Roby in Ad-Seg for the past eight months. And on December 13, 2007
9  they moved Roby (a CCCMS patient) to a section of the Ad-Seg Unit just recently cleared for G.P.
10  having previously been used as a regular Ad-Seg section, the back window of these cells were
11  frosted.
12      When Roby complained about this he was told by custody that he'd have to just deal with it
13  because the Madrid policy only applies to Ad-Seg not G.P. Showing their complete disregard for the
14  severe anxiety and depression they were causing Roby to suffer by being in such a cell deprived
15  of his property, deprived of even the sensory stimulus of being able to look out the window. On
16  January 22, 2008 Roby was moved out of that section only because it has again been made a
17  regular Ad-Seg section because of a combative incident that occured on another facility. The
18  defendants has shown they will not willfully stop their malicious mistreatment of Roby, and as
19  a direct and proximate result of these defendants' actions herein alleged, Roby suffered, and
20  continues to suffer severe emotional and psychological distress and mental anguish. Roby is entitled
21  to an award of compensatory and punitive damages for injuries.
22      Roby is entitled to injunctive relief, including, but not limited to, an order requiring his
23  transfer away from PBSP, where he will not be subjected to their continual efforts to cause
24  him harm and/or further retaliation by any of the defendants. There is no adequate remedy at law
25  to protect Roby from said retaliation and persecution, and without the equitable relief sought he
26  is susceptible to great and irreparable injury. The balance of hardships tips markedly towards
27  Roby in that there would be little or no prejudice or harm to defendants should Roby be
28  transferred away from PBSP, but great harm to Roby subsist should he be required to

stay at that institution.

## IV.
## PRAYER FOR RELIEF

WHEREFORE, plaintiff Kevin Roby prays for the following relief:

1.    Injunctive relief in the form of personal property being returned;

2.    Injunctive relief in the form of transfer away from PBSP to prison with EOP as Roby is again in need of that level of mental health care;

3.    Compensatory damages according to proof;

4.    Punitive damages according to proof;

5.    Appoint Counsel or award reasonable attorney fees pursuant to 42 U.S.C § 1988;

6.    Cost of suit; and

7.    Grant any and all such relief as the court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Signed the January day of 31, 2008

Respectfully Submitted

Plaintiff Kevin Roby

Pro Se

12.

Kevin Roby, D-93298
P.O. Box 7500 (A5-120)
Crescent City, CA 95532

**LEGAL MAIL**

RECEIVED

FFR – 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

United States District
U.S. Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102-34

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532

