1  KEVIN ROBY, CDCR# D-93298

2  P.O.Box 7500 (A5-218)

3  Crescent City, CA 95532

4  Plaintiff, pro se.

FILED

2008 SEP -2 P 3: 24

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

5

6

7

8             UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  **KEVIN ROBY,**                          CASE NO. C 08-1113 JF (PR)

12                    Plaintiff,        **AFFIDAVIT OF KEVIN ROBY IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

13    vs.

14  **T. STEWART, et al.,**

15                    Defendants.

16

17      1.  I, Kevin G. Roby, being first duly sworn, deposes and says: That I am

18  the plaintiff herein; that on November 17, 2002, Correctional Counselor II (CC II)

19  T. Lucarelli, terminated plaintiff's Single Cell Status. On November 20, 2002,

20  plaintiff filed an Inmate Appeal (602) to have his Single Cell Status restored and

21  for Pelican Bay State Prison(PBSP) Prison Officials to stop their malicious efforts

22  to house plaintiff with inmates that looked upon a Satanist as their mortal enemy.

23  (see Exhibit A-1)

24      2.  On December 28, 2002, plaintiff was interviewed at the First Level Review

25  by CC II T. Lucarelli. At that interview Roby explained to Lucarelli of the volatile

26  problems he has had with celling with Christian inmates; one being the antipathetic

27  enmity Christian inmates take towards him when he tries to pray in the cell. CC II

28  Lucarelli's response to that was: that it was against CDC policy for plaintiff to

1  pray in the cell, and that he needed the approval of the Warden to pray in his cell.

2  Roby then explained that that was not the only problem, that he has been in several

3  unprovoked cell fights just because most Christian Inmates view Satanist as their

4  mortal Enemy. Lucarelli then stated:"If you don't want to have problems with

5  Christian cellies then you need to change your religion, because Pelican Bay will

6  never accommodate the needs of a Satanist.  Your Appeal is Denied."

7       3.   On January 5,2003, plaintiff submitted his 602 to the Second Level. On

8  February 5,2003, the appeal Log No.PBSP-B-02-03309 was Partially Granted, and a

9  Modification Order Log # 03-16 was issued to have plaintiff taken before UCC to

10  determine his appropriate cell designation to include consideration of the CDC128-C

11  ofMay 15,2002. (see Exhibit A-2)

12       4.   On February 20, 2003  plaintiff went before defendants' Captain Wheeler

13  and CC II Trujillo for UCC per Modification Order Log # 03-16. Defendant Wheeler

14  immediately expressed his enmity towards the plaintiff by stating; "I'm only

15  accommodating you because I was ordered to. What would make someone want to be a

16  Satanist anyway? What, you didn't get enough attention as a kid?" Plaintiff did not

17  respond to the remark believing from Wheeler's tone of voice that he was looking

18  for an argument. Wheeler had a copy of the 128-C of May 15,2002 before him and

19  stated: "It says here you can be housed with another Satanist, so there is no need

20  for you to be on single cell status." Plaintiff concedes that he agreed with Wheeler

21  on that point, but explained that when he is cleared for double celling, Custody

22  keeps trying to force him to cell with Christians. Wheeler then assured Roby that

23  he would only be housed with another Satanist, and that he would inform Custody of

24  this Committee's action, and that it would be marked on the Picture Board so there

25  would be no confusion.(see Exhibit A-5)

26       5.   But on the 128-G of that UCC of February 20, 2003  defendants' Wheeler

27  and Trujillo makes it appear that plaintiff never wanted to be Single Cell and

28  wants to cell with anyone. Then they concealed their perfidious actions by not

Aff. of K. Roby Supp. Plaintiff's Opp. to Defs.' Mot. to Dismiss          Roby v. Stewart, et al.

2.                                      Case No. C 08-1113 JF (PR)

1  allowing the plaintiff to see the 128-G of February 20, 2003. It was not until

2  August 6, 2005, at a Disciplinary Hearing for refusing to cell with inmate Martin

3  (E-36171) who stated he was a Christian and would have a problem celling with me;

4  that I was allowed to see the UCC 128-G of February 20, 2003. (see Exhibit A-5 & B-1)

5      6.  On August 7, 2005, plaintiff filed a 602 in outrage at Defendants'

6  malicious actions to fraudulently write up the 128-G of February 20, 2003, with ...

7  malice aforethought to put plaintiff into a life threatening housing situation. The

8  appeal was held by Appeals Coordinator CC II Bradbury until August 24, 2005 (the

9  night plaintiff was forced to take inmate Avery (a fanatical Christian) as a cell

10  mate), with no action being taken on the appeal, stating it first needed to be sent

11  to CC I Trujillo. That night plaintiff sent the 602 to CC I Trujillo. The appeal

12  was return to plaintiff on September 20, 2005; some two weeks after plaintiff was

13  attacked by inmate Avery, stating that the matter will be address at plaintiff's

14  annual if necessary on his issues of concern. (see Exhibit A-5)

15      7.  After the attack, plaintiff suffered servere mental anguish and was

16  placed in a Crisis Bed (a stripped down cell in the infirmary, where you're not

17  allowed anything, and was under heavy medication) for a two week period, and then

18  transfered to the Psychiatric Securit Unit (PSU) for further treatment. Upon

19  arriving in PSU plaintiff was introduced to his clinician Dr. Pascoe, and plaintiff

20  told his clinician what had happened to him, and that he wanted to file a law suit

21  to make them pay for what they did to him. Plaintiff then asked Dr. Pascoe if he

22  should continue with the 602 of August 7, 2005, or should he file a new one. Pascoe

23  said I should contact CC II O'Dell on that matter as he was my assigned Counselor.

24      8.  I wrote CC II O'Dell a Request for Interview asking to see him on this

25  matter on what I needed to do to pursue this matter. CC II O'Dell did not respond,

26  but I did see O'Dell at my 30 day Review and the matter was discuss then, and

27  plaintiff was told by O'Dell that the matter did not need to be pursued further;

28  that the appeal would have been deemed completed with the February 20, 2003,

Aff. of K. Roby Supp. Plaintiff's Opp. to Defs.' Mot to dismiss          Roby v. Stewart, et al.

Case No. C 08-1113 JF (FR)

1    UCC hearing. He then said: "But you really can't pursue a civil suit on the matter

2    until after your criminal proceedings have been concluded." This made since at the

3    time for it was the same thing the Browns did in the O.J. Simpson case.

4        9.    After several months of waiting for this matter to be brought to court,

5    the plaintiff started writing the Del Norte District Attorney (DA) demanding a

6    speedy trail. The DA did not respond until April 23, 2007, stating that he was in

7    receipt of my demands for a speedy trial but that they did not apply because no

8    charges had been filed. (see Exhibit B-2)

9       10. Plaintiff having been led by prison officials into believing the Del

10    Norte District Attorney had filed Detainer to hold him at Pelican Bay State Prison,

11    filed a Motion to Dismiss for failure to prosecute. It was not until May 24, 2007,

12    when the Del Norte Superior Court return his Motion to Dismiss; stating they did

13    not have any filings on him; that I discovered prison officials had been lying to

14    me the whole time. (see Exhibits B-3 &B-4)

15       11. On June 19, 2007, plaintiff realized that prison officials may have also

16    lied to him about not needing to pursue the 602 further, then filed the appeal of

17    June 19,2007, requesting compensation for his pain and suffering for the malicious

18    actions and deliberate indifference of prison officials. The Appeal was Rejected

19    stating that this appeal duplicates the inmates previous appeal that was completed

20    at the 2nd Level, Log# PBSP B-02-03309. So prison officials did not lie on that

21    point. (see Exhibit B-5)

22

23    I declare under penalty of perjury that the foregoing is true and correct. Executed

24    at Pelican Bay, California, on August 26, 2008.

25

26                                    Kevin Roby

27                                     Pro se, plaintiff

28

Aff. of K. Roby Supp. Plaintiff's Opp. to Defs.' Mot. to dismiss        Roby v. Stewart, et al.

4.                                           Case No. C 08-1113 JF (PR)

A-1   INMATE APPEAL OF NOVEMBER 20, 2002         (3 PAGES) 1-3

A-2   MODIFICATION ORDER                         (3 PAGES) 4-6

A-3   128-C OF MAY 15, 2002                      (1 PAGE) 7

A-4   128-G OF FEBRUARY 20, 2003                 (1 PAGE) 8

A-5   INMATE APPEAL OF AUGUST 7, 2005            (3 PAGES) 9-11

# EXHIBIT A

STATE OF CALIFORNIA                                                                                          DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region                    Log No.                        Category
                                    **BSP**
1. _____    1. B-02-03309    2 single cell

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| ROBY | D-93298 | N/A | B6-126 |

A. Describe Problem: The continual revoking of my Single Cell Status. On three different occasions, starting with my arrival at PBSP, Prison Officials here have vehemently over ruled Psychiatric Chronos and/or Reports that I be Singled Celled, or housed only with another Satanist. Certain Prison Officials have taken offense to the word "Satanist" being on the chrono. Had these chronos and/or reports said: Be Single Celled or housed only with another type of gangmember; they'd honor that chrono, but because I'm a Satanist; no matter my fears or mental state, Prison Officials here at PBSP

If you need more space, attach one additional sheet.                    **(SEE ATTACHED SHEET)**

B. Action Requested: That my Single Cell Chrono of 05/15/02 be honored by PBSP Prison Official. Thank you.

Inmate/Parolee Signature: _____    Date Submitted: 11-20-2002

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

*BYPASS*

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

*BYPASS*

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed          CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

(CONTINUED FROM PAGE 1)

ROBY          D-93298        Housing B6-126-L

have with the vehemence of malice, continued an unrelenting
effort to house me with people that considers a Satanist their
Mortal Enemy. A situation they know will set me off into a
psychotic state of wanting to harm that cell mate for fear of
being harmed myself; having been in unprovoked cell fights
with people of the Christian/Muslim faith before; because of
me practicing my religion in the cell.

On APPEAL, a reprieve from these first attacks on my housing
was granted by the Associate Warden, turning this matter back
over to the Psychiatric Department, and they reaffirmed by way
of a CDC-128C that I be Single Cell or housed only with a
known "Satanist".

After all this, not more than six months later CCII ~~De Carrell~~ Lucarelli
revokes the housing chrono, informing me by way of a Correctional
Officer at my cell, stating: Your Single Cell Status has been
terminated by CCII ~~De Carrell~~ Lucarelli, you will have to take a cell
mate, if you refuse a cell mate brought to you, you will
receive Progressive Discipline.

This is starting to show a pattern of endangerment by Prison
Officials at PBSP towards me because I am a Satanist, and I
seek relief from these continual attacks.

Respectfully submitted by: _____

Date: 11-20-2002

2.

First Level    ☐ Granted    ☐ P. Granted    ☑ Denied    ☐ Other    12/3/02    Due D: 1/29/03

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 12/3/02    Due D: 1/29/03

Interviewed by: _____

_See attached_

Staff Signature: _T.D. Krasyel__    Title: _C/II___    Date Completed: 12/30/02
Division Head Approved: _M Clark___    Title: _C/II___    Returned
Signature:    Date to Inmate: 12/31/02

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_A S.L.R. is requested in the hopes of resolving this matter before this forces it to a bad situation. I_
_have a Psychiatric disorder which it may become seriously violent even of faith reaction. The medication_
_I take helps a great deal, but to put me with a Christian fellowship. To preserve is putting me and_
_that person at risk. Please adhere to the compatibility issue of the Psychiatric Choomo._

Signature: _Bob_    Date Submitted: 1-5-03

Second Level    ☐ Granted    ☑ P. Granted    ☐ Denied    ☐ Other    1-6-03    Due Date: 2-4-03

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 1-6-03    Due Date: 2-4-03
☑ See Attached Letter

Signature: _3. Lampkin CCII_    Date Completed: 1-31-03
Warden/Superintendent Signature: _T. McCarthy CDW_    Date Returned to Inmate: FEB 05 200

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the Third level within 15 days of receipt of response.

_____
_____
_____
_____
_____
_____

Date Submitted: _____

Signature: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other    Date: _____
☐ See Attached Letter

CDC 602 (12/87)

3.



PELICAN BAY STATE PRISON
APPEALS UNIT
P.O. BOX 7000
CRESCENT CITY, CALIFORNIA  95531-7000

---

### MODIFICATION ORDER
### LOG #03-16

---

TO: L. POLK                          DATE:    February 5, 2003

    Associate Warden                 INMATE: Roby

    General Population                CDC #:    D-93298

Please be informed that as a result of Inmate Appeal Log PBSP #02-03309, the following action is needed by your department/unit:

INSTRUCTIONS:

Based on the attached Second Level Decision, the Associate Warden of General Population shall ensure the inmate is taken to Unit Classification Committee to determine the inmate's appropriate cell designation to include consideration of the information contained on the CDC 128-C of May 15, 2002.

**Verification that this action has been completed shall be
provided to the Inmate Appeals Office.**

MUST BE COMPLETED BY: _____3-5-03_____    _____MJ Numurs_____
                                 DUE DATE                      Appeals Coordinator
                                                             Pelican Bay State Prison

### VERIFICATION

I have complied with this modification order and attached the appropriate documents for verification.

                Signature: _____

                Date:  _2-26-03_____

---

| **WHEN ORDER IS COMPLETED, RETURN TO INMATE APPEALS OFFICE** |
| --- |

FEB 27 2003
Rec & Log
Appeals-JW

4.

| PELICAN BAY STATE PRISON |
| SECOND LEVEL REVIEW |

MODIFICATION ORDER

DATE: FEB 0 3 2003

Inmate ROBY, D-93298
Pelican Bay State Prison
Facility B, General Population
Building 7, Cell 126

RE: WARDEN'S LEVEL DECISION             APPEAL: PARTIALLY GRANTED
      APPEAL LOG NO. PBSP-B-02-03309       ISSUE: LIVING COND

This matter was reviewed by JOE MCGRATH, Warden, at Pelican Bay State Prison. T. Lucarelli, Correctional Counselor II, conducted the Appeal interview at the First Level of Appeal Review on December 28, 2002.

## ISSUES

The inmate requests that a CDC 128-C dated May 15, 2002, advising that the inmate should be single-celled, be honored.

## FINDINGS

I

The inmate contends that staff have taken offense to the medical chrono since it states the inmate should either be either single-celled or only housed with a Satanist due to the inmate's history and potential for violence.

II

The First Level Reviewer interviewed the inmate on December 28, 2002, regarding his Appeal issue. The inmate was advised that his practice of Satanism conflicts with the facility's operations, as it is expected that inmates double-cell. The inmate was further advised, however, that he is entitled to believe spiritually however he chooses, as long as his beliefs do not disrupt the normal operations of the institution. The inmate was informed that a Classification Committee reviewed his case factors on September 3, 2002, and it was determined that he was appropriate to double-cell.

As a part of the investigation into the Appeal, B. Samples, Correctional Counselor II, conducted a review of documentation in the Central File. A CDC 128-G dated May 24, 2001, from California State Prison, Sacramento, was noted identifying the inmate as warranting single-cell status, at that time, due to local enemy concerns. However, the same chrono noted he would be eligible for double-celling upon arrival at the receiving institution. The CDC 128-G dated August 22, 2001, generated following his arrival at Pelican Bay State Prison, approved the inmate for double-celling. The chrono further states that the inmate believed he could be safely housed with a non-affiliated black inmate. After the CDC 128-C of May 15, 2002, was generated, the inmate appeared for a subsequent review before a Classification Committee on September 3, 2002. The inmate's custody was noted as CLO B, but the chrono stated the inmate had no cellmate, and that single-cell status had previously been applied.

5.

Supplement Page 2
Roby, D-93298
Appeal # PBSP-B-02-03309

A-2                    PAGE 3 of 3

### III

The California Code of Regulations, Title 15, Section 3377.1 (c), states that single-cell status shall be determined by a Classification Committee, and must be based upon documented evidence that an inmate may not be safely housed in a double-cell, to include a *recommendation* by a health care clinician.

### DETERMINATION OF ISSUE

The inmate is requesting to be designated as warranting single-cell status, based upon a clinician's recommendation, due to his alleged potential for violence. However, this is a determination to be made by a Classification Committee.    The inmate had appeared before a Classification Committee on September 3, 2002, following the clinician's recommendation, but the related CDC 128-G of September 3, 2002, is ambiguous concerning the inmate's cell designation. Additionally, it is unknown whether the information contained on the CDC 128-C of May 15, 2002, was even considered by the committee.    Therefore, the APPEAL IS PARTIALLY GRANTED, as an additional review will be conducted by a Classification Committee to determine the inmate's appropriate cell designation.

### MODIFICATION ORDER

A Classification Committee will be conducted to determine the inmate's appropriate cell designation to include consideration of the information contained on the CDC 128-C of May 15, 2002.

*J. Schwartz*

JOE MCGRATH
Warden
Pelican Bay State Prison

BDS#018 1-31-03

6.

Name & Number:   ROBY,   VIN   D93298   224U   CDC-128C

This patient should be single cell status or housed only with other know "Satanist" due to history of and potential for violence. (Written by: T. Fishback, M.D.)

Original:    Medical Records

cc:   AWC    Inmate
      CCII-Fac.  C-File

_____
RENE KANAN, M.D.
Chief Physician & Surgeon

Written:  05/15/02
Typed:  05/22/02      ROBY, KEVIN      D93298      PBSP/ab      MEDICAL

A-3          PAGE 1 of 1

7.

A-4                                         PAGE 1 of 1

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
                                                                      CDC-128G (Rev. 12/91)

NO.    D-93298        NAME:    ROBY,Kevin          Hsg: B7-126
Custody:  CLO BR      CS:    119(IV)  WG/PG: A2BEff 07/31/01    Assignment:     SS/FS TABE WL
RelDate:  LWOP                        Reclass: 09/03            Action:         REVIEW CELL DESIGNATION
                                                                               REQUEST PER MODIFICATION
                                                                               ORDER 03-16

Inmate ROBY appeared before PBSP Fac B UCC on this date for special review. Per CDC 128C dated 07/24/02 S is a participant of the
Mental Health Services Delivery System and Correctional Officer Nuetzman was assigned as a staff assistant. UCC notes S appeared before
Committee per Modification Order 03-16 (inmate Appeal PBSP-02-03309). UCC reviewed inmate's appropriate cell designation, noting
and taking into consideration, information contained on the CDC 128B dated 05/15/02. **After review of all case factors, Committee acts
to clear for double cell status.** During Committee S stated, "I did not want to be single cell status. I need assistance in order to find a
cellie." Classification score is a current Level IV score of 119 points. S participated in committee, acknowledged understanding and agreed
with Committee action, stating, "Okay, this is the way I've been trying to go with this." S was reviewed and cleared for double celling. S
was advised of Committee's decision and his right to appeal. Next reclass scheduled for 09/03, for annual review.

CHAIRPERSON: S. C. WHEELER F/C ;                      J. BROWMAN  CC II          RECORDER: S. TRUJILLO  CCI

Date 02/20/03 (TRUJILLO /tjs)          Classification  FAC-B UCC  PROGRAM REVIEW                    Inst: PBSP

8.

State of California

Department of Corrections
CDC Form 695

## INMATE/PAROLEE APPEALS SCREENING FORM

NAME: ROBY          PBSP LOG NO: **A-5**          PAGE 1 of 3

CDC #: D93298    CDC HOUSING: B-7-122    OTHER LOG #: _____

**YOUR APPEAL IS BEING RETURNED FOR THE FOLLOWING REASON(S):**

[X] 4. In violation of CCR 3084.2(b), 3084.3(c)(4) & 3084.5(a)(1), you failed and must attach evidence that shows you attempted Informal resolution, prior to the appeal being assigned to the First or formal Level of Appeal review. If a staff member fails to respond after 10 working days, use the Chain of Command and submit the Appeal to that staff members Supervisor, or unit/area Supervisors.

[X] Counselor          [ ] PBSP R&R          [ ] Med Clinic        [ ] Records
[ ] Unit Officer       [ ] PSU Prop.         [ ] Dental Clinic     [ ] 1/M Assign
[ ] Mail Room          [ ] PBSP SHU Prop.    [ ] Psych Office      [ ] PBSP Trust Office
[ ] Law Library        [ ] Food Serv         [ ] Med Records       [ ] Plant Ops
[ ] Work Supervisor                          [ ] Other _____

[ ] 5. You have not adequately completed the CDC form 602, or have not attached the proper documents. Follow instructions, attach the items noted below, send what documents you have, or explain why they are not available, 3084.3(c)(5):

[ ] Supporting Documents & Receipts          [ ] CDC 1845 Disability Verification
[ ] GA 22 Request For Interview              [ ] CDC 1824 Reasonable/Accommodation
[ ] CDC 115 Results With final dispo         [ ] CDC 7362 Health Care Req Co-Pay
[ ] CDC 115 IE/DA information/Report         [ ] CDC 128-C Medical Chrono
[ ] CDC 115 Supplemental Reports             [ ] Cell Search Slip
[ ] CDC 114-D Lockup Order                   [ ] Property Inventory Receipt
[ ] CDC 1030 Confidential Disclosure         [ ] CDC 143 Prop. Transfer Receipt
[ ] Lab Results Sheet                        [ ] Package Inventory Slip
[ ] CDC 7219 Medical Report                  [ ] Proof of Ownership / Value
[ ] CDC 128-A _____                        [ ] Board of Control Release Form
[ ] CDC 128-B _____                        [ ] Trust Statement
[ ] CDC 128-G _____                        [ ] CDC 193 Trust Acct Wthdrwl Ord
[ ] CDC 629A / 629B Assess SHU Term          [ ] Legal Status Summary
[ ] CDC 812 / A / B Critical / Enemy         [ ] Abstract of Judgment (AOJ)
[ ] CDC 839/840 Class/Reclass Score          [ ] CDC 1858(PC 148.6/CCR 3391(d)) Info.Advis.
[ ] CDC 958 Restoration Request              [ ] Emerg. unwarranted CCR 3084.7(a)(2)(A)
[ ] CDC 1819 Correspondence Denial           [ ] Failed to Complete Section _____
[ ] Other _____                            [ ] Sign & Date Section _____
                                             [ ] CDC Form 602 _____

[ ] 7. The issue has been resolved, PBSP Appeal Log No. _____. A copy of the Second (Warden's) Level of Appeal review is attached. CCR 3084.2(g)(1)(2)(3).

[ ] 8. Abuse of the appeal procedure: _____

Comments: _Discuss this issue with your assigned C/O and obtain an informal response. If not satisfied follow the instruction on the form._

_[signature]_          8/19/05
D. W. BRADBURY, CC II          Date
PBSP Appeals Coordinator

This screening action may not be appealed unless the above reason/s are inaccurate and the inmate can provide supporting arguments against the screening decision.

**PERMANENT APPEAL ATTACHMENT  -  DO NOT REMOVE**

PBSP      (695-SOUT.DOC) (Rev. Nov. 2, 2004) CCR 3084.3(d)      PBSP

A-5

PAGE 2 of 3

STATE OF CALIFORNIA

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category

1. BSP    1. _____    9-1
wishes to b/c w
2. _____    2. _____    satanist only

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| ROBY | D-93298 | | B7-122-L |

A. Describe Problem: On 07-29-05, C/O Wenning brought inmate MARTIN (E-36171) to my cell, and gave me a direct order to house with him. I informed MARTIN that I was a Satanist, and he stepped back from the cell stating that he was a Christian, and that this would not work. C/O Wenning again ordered us to cell together. I then showed C/O Wenning a copy of my CDC 128 dated 05-15-02, stating that I'm not to be housed with Christians. C/O Wenning stated that I'm cleared for double celling and cell with who they bring to my cell.

CONTINUED ON ADDITIONAL SHEET

If you need more space, attach one additional sheet.

B. Action Requested: That the agreement made by the 02-20-03 Committee be recorded on the 128C, so Custody will stop trying to force me into a life threatening cell situation.

Inmate/Parolee Signature: _____    Date Submitted: 08-07-05

C. INFORMAL LEVEL (Date Received: 8-30-05 )

Staff Response: You are currently scheduled in the month of September for your Annual Review. During said review, we can re-review requested issues from your committee of 2/20/03 and expound more thoroughly on your if necessary on your issues of concern. There fore, the appeal is partially granted, as an additional review will be conducted by UCC committee.

Staff Signature: R. Moss cc8    Date Returned to Inmate: 9-2-05

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

24    BS    AUG 0 8 2005    ⟵ 10.

ROBY    D-93298    A-5    PAGE 3 of 3

CONTINUED:

Knowing this situation would not turn out well, I refuse to accept MARTIN into the cell. Receiving a 115 for Refusal To Obey Orders. On 08-06-05, I went to the 115 hearing, and was informed by the Hearing Officer, that I must house with whoever they bring to my cell, and any further refusals would result in the confiscation of all my appliances.

I then informed the Hearing Officer that it was agreed by Committee that I would only be housed with another Satanist, as is stated on the 05-15-02 CDC 128B. The Hearing Officer stated he had no record of it, and would have to check my C-file. The Hearing Officer then called me back later with my C-file present, and showed me the CDC 128G in question. Which was my first time seeing this form; for it was never sent to me. And I saw that there was no mention of the agreement that was made Per Modification Order 03-16 (Inmate Appeal PBSP-02-03309)

The 128G 02-20-03, states that I said, "Okay, this is the way I've been trying to go with this." But it fails to state what I was agreeing to. That I would only be housed with another Satanist. F/C Chairperson S.C. Wheeler, stated that since the 128C states that I can be housed with another known Satanist, that I did not need to be Single Cell Status. I agreed, telling him that I could be housed with another Satanist. I told him the problem was that Custody keeps trying to force me to live with god believers. Chairperson Wheeler, then assured me that he would contact Custody, and inform them of the decision of this Committee, and that it would be marked on the picture board so there would be no confusion.

This was everything I had wanted, and I wholeheartedly agreed with the Committee's decision. I trusted them to be honorable, and was ultimately let down. The omission of the agreement; unless it was an oversight, shows an intent by PBSP Staff to put me in harms way. Which makes me feel they're trying to set-up a Christian/Satanic confrontation. I do not wish to be harmed, or do I want to harm anyone. I am asking for this matter to be cleared up, before I'm force into a volatile situation.

11.

B-1   DISCIPLINARY HEARING OF AUGUST 6,2005            (2 PAGES) *1-2*

B-2   DISTRICT ATTORNEY'S LETTER                       (1 PAGE) *3*

B-3   CC II O'DELL STATES DA DETAINER ISSUED           (1 PAGE) *4*

B-4   COURT STATES NO FILINGS OF ANYKIND ON PLAINTIFF  (1 PAGE) *5*

B-5   INMATE APPEAL OF JUNE 19, 2007                   (3 PAGES) *6*

B-6 DISTRICT ATTORNEY'S ADMISSION OF NOT FILING        (1 PAGE) *7-9*
    CHARGES TO ALLOW PRISON TO CONTINUE THEIR
    DECEPTION TO PLAINTIFF

# EXHIBIT B

STATE OF CALIFORNIA
RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS
PAGE __1__ OF __2__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| D-93298 | ROBY | B05-07-0020 | PBSP | 8/6/05 |

☐ SUPPLEMENTAL    ☒ CONTINUATION OF:    ☐ CDC 115 CIRCUMSTANCES    ☒ HEARING    ☐ I.E.REPORT    ☐ OTHER

**Hearing:** The hearing was convened on 8-6-05, at approximately 0900 when I introduced myself to ROBY as the Hearing Officer for this disciplinary. ROBY stated he was in good health with normal vision and hearing. ROBY acknowledged that he received a copy of the following document more than 24 hours in advance of the hearing: CDC-115. This report as well as the disciplinary charge of REFUSAL TO OBEY ORDERS was reviewed with ROBY in the hearing. He stated that he understood both and that he was prepared to begin the hearing.

**District Attorney:** This has not been referred for criminal prosecution.

**Due Process:** The behavior of this inmate was evaluated at the time that the Reviewing Supervisor reviewed this disciplinary report. The Reviewing Supervisor concluded that a mental health assessment was not required. The SHO concurs. There is no compelling need for a mental health assessment based upon the circumstances given in this report. The disciplinary was served on the inmate within 15 days of discovery and the hearing was held within 30 days of service. The inmate received his copies of all documents more than 24 hours in advance of the hearing. There are no due process issues.

**Staff Assistant:** A Staff Assistant was not assigned as ROBY agrees that he speaks English, is literate (that is, reads at 4.0 or above), the issues are not complex and a confidential relationship is not required. In the hearing, ROBY confirmed that assignment of a Staff Assistant was not necessary.

**Investigative Employee:** An IE was not assigned as the issues are not complex and the available information is sufficient. Per the CDC 115-A and his statements in the hearing, ROBY has not requested IE assignment.

**Request for Witnesses:** ROBY requested Inmate Martin, E-36171 as a witness to give the following anticipated testimony: "When they tried to cell us up together, I made it clear to everybody that I was a Christian." As the requested witness was not available to the hearing and I accepted that the witness would provide the given testimony if present in the hearing, I advised ROBY that I would stipulate that the requested witness would provided the requested testimony if present in the hearing and ROBY was satisfied with this response.

**Video and photo evidence:** There was no video or photo evidence used in this hearing.

**Plea:** Not Guilty.

**Hearing testimony:** ROBY gave the following testimony as his defense: "My CDC 128G speaks to the specific requirements of who I can cell with. I am a Satanist. I need to live with another Satanist – certainly not a Christian."

**Finding:** Guilty of the Div. F-3 (CCR 3315 (a)(3)(J)) offense REFUSAL TO OBEY ORDERS. This offense requires evidence that the inmate was given a direct order by a staff member and the inmate refused to comply with this order. This finding is based upon the following preponderance of evidence:

A. The testimony of the Reporting Employee in the disciplinary report of 7-29-05 wherein Officer P. Wenning testifies that "On 7/29/05, at approximately 1005 hours, I gave Inmate ROBY (D-93298, B7 122L) a direct order to double cell with Inmate MARTIN (E-361171, B5 211U). Inmate ROBY refused this direct order stating, "I only want a Satanist as a cellie – no I don't want him." Both inmate share similar case factors that deemed them compatible for double celling and there is no documented reason for Inmate ROBY to maintain a cell alone."

**The preponderance of evidence in this hearing supports a finding of GUILTY to the charge of REFUSAL TO OBEY ORDERS. Upon review of ROBY's central file, ROBY is cleared for double celling. There is one 128G that quotes**

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| C.E. WILBER | | Correctional Lieutenant | 8/6/05 |

| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
|---|---|---|---|
| | | 8/10/05 | 1800 |

1

STATE OF CALIFORNIA                                           DEPARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C                              PAGE  2  OF  2

| CDC NUMBER D-93298 | INMATE'S NAME ROBY | LOG NUMBER B05-07-0020 | INSTITUTION PBSP | TODAY'S DATE 8/6/05 |
|---|---|---|---|---|

☐ SUPPLEMENTAL    ☑ CONTINUATION OF:    ☐ CDC 115 CIRCUMSTANCES    ☑ HEARING    ☐ I.E REPORT    ☐ OTHER

**ROBY** as stating in committee, "I need to live with another Satanist", however nowhere is it documented that committee has set any parameters for his double celling. It is the expectation that programming inmates accept a cellmate when ordered to do so. A difference of religion is not a precluding factor in assigning a cellmate. **ROBY** is encouraged to seek out a like-minded inmate to cell with, however is still obligated to accept a cellmate when ordered to do so. Officer P. Wenning gave **ROBY** a lawful order to cell up with Inmate Martin and he refused to obey that order.

**Disposition:** Assessed **30** day credit forfeiture for this Div. F offense. **ROBY** was informed that his credit restoration period began 7-30-05 and this restoration period is a minimum of three months (if within 60 days of scheduled release, the minimum is reduced to one month). If he is found guilty of any administrative or serious CDC-115 issued during this credit restoration period, he forfeits his eligibility for restoration. If he completes this restoration period disciplinary free, he may request a classification review. Classification will make the final determination whether he is eligible for restoration or request an additional period of disciplinary free conduct. Appeal rights were explained. **ROBY** was referred to CCR §3084.1 and following for additional information on appeal procedures.

**Additional penalties:** Per CCR 3315 (f)(5)(C), **ROBY** was informed that he will be confined to his quarters pursuant to CCR 3333 for a maximum of ten consecutive days beginning with 8-6-05 and ending with (continuing through) 8-15-05. While confined to quarters, the inmate will be released to attend work and program assignments.

| SIGNATURE OF WRITER C.E. WILBER | | TITLE Correctional Lieutenant | DATE NOTICE SIGNED 8/6/05 | |
|---|---|---|---|---|
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | | DATE SIGNED: 8/10/05 | TIME SIGNED: 1800 |

2.

B-2    PAGE 1 of 1

**MICHAEL D. RIESE**
District Attorney

450 H Street
Courthouse
Crescent City,
California 95531
(707) 464-7210
FAX: (707) 465-6609



**District Attorney**
**County of Del Norte**

**ALISON BAXTER**
Victim Witness Coordinator
(707) 464-7273
Fax: (707) 464-2975

**JUDY REYNOLDS**
Sr. Legal Assistant
"Office Manager"
(707) 464-7210
Fax: (707) 465-6609

April 23, 2007


Kevin G. Roby, D-93298
Pelican Bay State Prison
P.O. Box 7500 (B-2-104)
Crescent City, CA 95532

Mr. Roby,

The District Attorney's Office is in receipt of your demand for
speedy trial and appointment of counsel.

1381 Demands do not apply in cases in which charges have not been
filed.

Sincerely,

MICHAEL D. RIESE
DISTRICT ATTORNEY

/hc

3.

STATE OF CALIFORNIA
ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

DEPARTMENT OF CORRECTIONS
S.O'DELL CCII

| DISTRIBUTION: | |
|---|---|
| WHITE - CENTRAL FILE | CANARY - WARDEN |
| BLUE - INMATE (2ND COPY) | PINK - HEALTH CARE MGR |
| GREEN - ASU | GOLDENROD - INMATE (1ST COPY) |

| INMATE'S NAME | CDC NUMBER | |
|---|---|---|
| **ROBY** | **D93298** | **PBSP PSU** |

## REASON(S) FOR PLACEMENT (PART A)

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

[X] ENDANGERS INSTITUTION SECURITY      [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:
You are currently serving a determinate SHU term due to having been found guilty of RVR dated 9/6/05, Murder, which resulted in a MERD of 4/21/07. You now have safety concerns if you were released to PBSP IV due to the offense having occurred at PBSP. The Del Norte Co. District Attorney (DA) has not made a decision to prosecute the case and a DA detainer (do not transfer) has been issue. Based upon the aforementioned, your presence in a general population continues to pose a threat to the safety of others and the security of the institution. You are scheduled to appear before a Classification Committee for a Pre-MERD review. During this review a determination will be made relative to your possible retention in PSU on ASU status upon the expiration of your MERD. You will be afforded the opportunity to present any relevant information to Classification Committee regarding your current housing and or program. Additionally, you are housed in the Psychiatric Services Unit due to your current Enhanced Outpatient level of mental health care.

[ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL)   [ ] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: / /

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE→ | TITLE |
|---|---|---|---|
| | S. Keppard | | L.T |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| 3-9-07 | 0713 | R. Areis | R. Areia | C/O |

[ ] INMATE REFUSED TO SIGN    INMATE SIGNATURE  (X) _____  CDC NUMBER 093298

## ADMINISTRATIVE REVIEW (PART B)
*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT NAME | TITLE | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |
| | | | |

### IS THIS INMATE:

| | | | | | | |
|---|---|---|---|---|---|---|
| LITERATE? | [ ] YES | [ ] NO | EVIDENCE COLLECTION BY IE UNNECESSARY | | [ ] YES | [ ] NO |
| FLUENT IN ENGLISH? | [ ] YES | [ ] NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | | [ ] YES | [ ] NO |
| ABLE TO COMPREHEND ISSUES? | [ ] YES | [ ] NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | | [ ] YES | [ ] NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | [ ] YES | [ ] NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | | [ ] YES | |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [ ] YES | | | | | |

Any "NO" requires SA assignment                    Any "NO" may require IE assignment

[ ] NOT ASSIGNED                    [ ] NOT ASSIGNED

### INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER   [ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

[ ] NO WITNESSES REQUESTED BY INMATE    INMATE SIGNATURE _____   DATE _____

### WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| | | | |
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
| | | | |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY_____ [ ] RETAIN PENDING ICC REVIEW  [ ] DOUBLE CELL  [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION:

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| | | | | |
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW |

4

See chronological Classification Review document (CDC 128 - G) for specific hearing information

B - 4                    PAGE 1 of 1

# DEL NORTE SUPERIOR COURT
450 H. Street, Room 209
Crescent City, California 95531
(707) 464-8115

TO:    Mr. Kevin Roby # D-93298              DATE: 05/21/07

## THE SUBMITTED DOCUMENTS ARE RETURNED FOR
## THE FOLLOWING REASONS:

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### DOCUMENT SUBMITTED

( Motion to dismiss)

(x )    Other: At this time we do not have any filings for the name given.

( )    Document does not comply with California Rules of Court.

( )    Document is illegible.

( )    Document contains excessive alterations or erasures.

( )    Filing fee not submitted with documents or Fee Waiver Application not provided.

**THE SUPERIOR COURT CLERK'S OFFICE IS PROHIBITED BY LAW FROM
OFFERING OR GIVING LEGAL ADVICE.  IF YOU HAVE ANY QUESTIONS,
YOU MUST CONSULT AN ATTORNEY.**

SANDRA LINDERMAN
COURT EXECUTIVE OFFICER

By _____
        Deputy Clerk

5.

State of California                                                    Department of Corrections and Rehabilitation
                                                                                        CDC Form 695

6-19-07

INMATE/PAROLEE APPEALS SCREENING FORM

Name: ___Roby___          Number: ___D93298___ B-5          PAGE 1 of 3

### YOUR APPEAL IS BEING REJECTED/CANCELLED AND RETURNED FOR THE FOLLOWING:

Screening Appeals Rejection Criteria:

[ ] 1.  The resolution is not within CDC's jurisdiction. See CCR, Title 15, Sections 3084.2(e) and 3084.3(c)(1).

[X] 2.  The appeal duplicates the inmates previous appeal. See CCR, Title 15, Section 3084.3(c)(2).
  - [ ] (a) Your appeal has been screened out on _____ for _____.
  - [ ] (b) Your appeal is being reviewed at the _____ Level, Log # _____.
  - [X] (c) Your appeal has been completed at the _2nd_ Level, Log # _PBSP B-02-03308_.

[ ] 3.  The appeal concerns an anticipated action or decision. See CCR, Title 15, Section 3084.3(c)(3).

[X] 6.  The appeal exceeds the 15 working days time limit, and the inmate has failed to offer a credible explanation as to why he could/did not submit the appeal within the time limit. See CCR, Title 15, Sections 3084.2(c), 3084.3(c)(6), and 3084.6(c).

[ ] 8.  Abuse of the Appeal Process/Right to Appeal.
  - [ ] (a) Excessive filings. Submission of more than one non-emergency appeal within a seven-calendar-day period is excessive. See CCR, Title 15, Section 3084.4(a).
  - [ ] (b) Inappropriate statements. The Appeal contains false information, profanity, or obscene language. The appeal is rejected. See CCR, Title 15, Section 3084.4(b).
  - [ ] (c) Excessive verbiage. Appeal cannot be understood or is obscured by pointless verbiage or voluminous, unrelated documentation. See CCR, Title 15, Section 3084.4(c).
    - [ ] (1) Only allowed 1 added page, front and back, to describe the problem and action requested in Sections A and B, per CCR, Title 15, Section 3084.2(a)(1).
    - [ ] (2) Only supporting documentation necessary to clarify appeal shall be attached to the appeal, per CCR, Title 15, Section 3084.2(a)(2).
  - [ ] (d) Lack of cooperation. Appellant refused to cooperate and/or interview with the reviewer which has resulted in cancellation of the appeal, per CCR, Title 15, Section 3084.4(d).
    - [ ] (1) Your appeal was screened out and returned to you with instructions:
      [ ]              [ ]              [ ]
  - [ ] (e) Failed to reasonably demonstrate the decision, action, policy, or condition as having an adverse affect upon the inmate's welfare, per CCR, Title 15, Section 3084.1(a).
  - [ ] (f) This is a request for information. It is not an appeal. Write a note (GA-22, Request For Interview form or CDC-7362, Medical Request form).

[ ] 9.  Cannot appeal on behalf of another inmate/person. See CCR, Title 15, Sections 3084.2(d) and 3084.3(c)(7).

[ ] 10. Issue resolved at previous level of Appeal review. See CCR, Title 15, Sections 3084.3(c)(8) and 3084.4(d).

Comments: ___This issue has already Bey addressed___

_C. Wilber_                                          JUN 2 1 2007
C. E. WILBER (A) (, D'sezico, cc 7(A)          Date
Appeals Coordinator

This screening decision may not be appealed unless you can support an argument that the above is inaccurate.
In such a case, please return this form to the Appeals Office with the necessary supporting information.

### PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE

JUN 2 0 2007
          PBSP       (Rev. 11/06)       CCR 3084.3 (d)       PBSP

6.

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region
1. _____  2. _____

Log No.
1. _____  2. _____

Category
17

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME Kevin G. Roby    NUMBER D-03208    ASSIGNMENT    UNIT/ROOM NUMBER B2-104

**A. Describe Problem:** This 602 is late in being filed because I was misled by PBSP prison officials; CC II O'Dell, Lt. Cooke, and Sgt. T. Stewart, into believing criminal proceedings were imminent, and that it would be prudent to resolve the criminal aspects of the case before pursuing civil claims. At the time this made sense, and I was shown this DA detainer dated September 27, 2005, which they said was filed by the Del Norte District Attorney, and to be patient because this was a serious matter. It is now two (2) year later, and I have since found that PBSP prison officials knew from the beginning there was never a detainer filed by the DA. Why they lied about this and purposefully misled me is not clear, but it is of no fault of mine. Thus, I now present my complaint: (additional sheet)

If you need more space, attach one additional sheet.

**B. Action Requested:** I ask that the prison officials at fault be disciplined; that I be compensated for my pain and suffering caused by the callously malicious way prison officials put my life in danger. I also ask to be immediately transferred away from PBSP because of the continued efforts by prison officials to compound my mental anguish.

Inmate/Parolee Signature: _Kevin Roby_    Date Submitted: 6-19-07

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

Staff Signature: _____    Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

JUN 20 2007
16

7.

CONTINUED:

I allege that PBSP prison officials; CC II T. Lucarelli, FC S. Wheeler, and CC I S. Trujillo, acted with deliberate indifference and malicious vindictiveness, when they knowingly with malice aforethought, forced me to house with an inmate that viewed a Satanist as his mortal enemy, which **ultimately** led to him assaulting me, and me having to fight for my life.

These officials knew I was living in a dangerously volatile situation, and they sat back malevolently and waited for things to explode. Their implacable turpitude towards me began when CC II Lucarelli, came across the 128C dated 5-15-02, and took offense to the word "Satanist" on the document. That same day she sent an S&E officer to my cell to inform me my single cell status had been revoked, and that I would have to accept any inmate that was brought to my cell. I contacted the 6 Block Floor Officer to ask what was going on. He told me CC II Lucarelli had revoked my "S" cell status.

I then showed him the appeal decision of 11-6-01, PBSP-A01-02710, which states; "If a health clinician's evaluation recommends single cell status, I would be scheduled for UCC for application of the "S" suffix." I then showed him the 5-15-02, 128C, which recommends me for single cell status. So I asked him what was her reasoning for revoking my single cell status. Seeing I had a good point, he took my paper work to J. Browman (who was then 6 Block's CC I), and Browman told my floor officer that Lucarelli had already talked with him, and he was told my documents were not worth the paper they were written on.

I then 602 the matter, and CC II Lucarelli came herself to conduct the First Level Review and I got to see the intensity of her antipathy towards me. I tried to explain to her the inherent problems I have with celling with Christians; one of which is the combative nature they take towards me when I attempt to pray. She stopped me there, and said my praying in the cell was against PBSP policy, and if I continued doing it I would be written-up.

I then explained that my problems living with Christians does not steam solely from me praying in the cell, just me being a Satanist causes problems with them; and living under that kind of stress 23 hours a day, ever day, exacerbates my mental health issues. Her acerbic response was that, "If you don't want to have problems with Christian cellies then you need to change your religion, because it will be a cold day in hell before Pelican Bay accommodates the needs of a Satanist. Your appeal is denied."

I continued the appeal to the Second Level (see Warden's Level Decision Log # PBSP-B-

over

8

# 50 CENT

*[continued from page 122]*

Jay-Z, Diddy and Kanye to your advantage. You weren't cleared to be there, were you? No, I wasn't. But I felt like it. When the security people saw me, they went, "Wow, this is 50 Cent. He's the hottest." They let me walk onto the stage, and I ruined [Kanye's] little moment. It was supposed to be him and Jay-Z. Nah, it's me, him and Jay-Z. So you planned to steal Kanye and Jay-Z's shine? No, not steal the shine from Kanye and Jay-Z, but share the moment [*laughs*]. You see how they point out that it was a monumental moment? That's something I created. Do you think people have come to expect certain behavior from 50 Cent? People already know what my response to something is going to be based on a previous situation. They can already assume that if somebody says something, I'm going to respond to it immediately, because that's my personality. Jay-Z will sit there and watch these guys say something and go, "I'm not going to say anything to this guy. He's a bum; he's nothing." They grow more disrespectful of Jay-Z as they go. Jay-Z has had issues with Ja Rule, Jadakiss, Fat Joe...uh, who else? Lil' Wayne. Every single one of them has had incidents with Jay-Z before me, because they feel like at one point he was in the position I'm in now. They started calling him a flat-out faggot. That he's wearing *chancletas*. That he's a camel and all this other shit. Look at the disrespect he bears from Cam'ron. Where's Cam'ron at now [since he came at me]? He's on mute. I'll put his ass out of business right away. You went after Lil' Wayne on "Part-Time Lover" with the rhyme "You make me want to kiss you like Baby do Wayne/And make you call me Daddy like Baby do Wayne/Damn, that shit sounds gay, it's insane/I guess that's the price a lil' nigga pay for fame." What's that about? I've already baited Lil' Wayne to come on out so I can break his little neck. My consistency will break his neck the same way LL's consistency broke Canibus'. Lil' Wayne is a talented rapper but not a great songwriter. He has had great verses on other people's projects, but they were not his complete ideas over production that he picked. He's not marrying the right production and lyrics to make classic hit records. But if he's not coming after you, why bother him? Why *not* break his neck? I got nothing else to do. If they set you up to believe you are in a situation you're not actually in yet, then you go out there... See, he's saying what he's saying to Jay because Jay didn't respond to him. I'm giving him something to work off. Is that one of 50's laws? Yeah. Sometimes the best defense is a good offense. ⚜

# LLOYD AVERY II

*[continued from page 128]*

When the Averys were notified that night, Che flew to Pelican Bay for answers. He was allowed to view the body but became suspicious at the funeral home. "I was overpowered by the smell. It took the breath out of me," he remembers. "I smelled old death. I thought, 'That didn't just happen.'" He confronted the mortuary, who said Lloyd had been dead for "at least two days." The family then paid for a private autopsy, which listed a slightly different cause of death than the prison autopsy: blunt force trauma to the head complicated by an aspiration of blood. It also said that the injury to Lloyd's skull was "suggestive of either a blow due to a flat surface such as a carpenter's hammer or impact on a similar type surface."

Two investigations were already under way: The district attorney's office handled the criminal aspect, and the Inspector General's Bureau of Independent Review probed administrative misconduct. Eight months later, the bureau determined that the prison's handling of security issues and the crime scene were "inadequate."

Meanwhile, Roby confessed to the murder and is in solitary confinement to this day. But the DA has yet to file charges. "Roby is doing three life terms and never getting out," says Del Norte County DA Mike Riese. "I want the guy to get punished for what he did, but it's ironic that once I file, he'll get better treatment than the average prisoner. If it were a death-penalty case, we wouldn't be having this discussion."

The Averys, however, insist a trial is the only way to discover the truth. "All I want to do is prove that the corrections officers had nothing to do with it," says Che, who thinks Roby's confession sounded coached. They've also sent a request to the attorney general, who can supersede the local DA, but he is standing pat. "We are going to allow the DA the discretion a locally elected official gets, which is to investigate the case,"

says California Deputy AG Geoffrey Lauter. "We will wait till a decision is made [by the DA]. Because Mr. Avery has asked us to review the case, we will."

It is still unknown, however, why Lloyd, a born-again Christian, and Roby, a Satanist, were housed together. "That was a recipe for disaster," says prisoner-rights attorney Charles Carbone. "The department is well equipped and should be sophisticated enough that two obviously incompatible people do not live with one another." Because the criminal investigation is still open, the Averys don't know who approved their pairing and why.

On the two-year anniversary of Lloyd's death, Che thought about the homecoming that never occurred. "I saw the change that happened in my brother," he says. "If he did kill them people, he had to live with that. I was just looking for him to come out and do big things with the evangelism. His whole life had turned around; it was like he was a different person." He jokes that L.A. Deuce would have probably hung up the mic, considering that he didn't curse anymore.

He then found the movie script Lloyd was writing while living in the Jungle and then again in prison. He skimmed through it. "It's kind of autobiographical," he says. The lead character is named L.A. Deuce. "He's this badass motherfucker who got in trouble, and that's what the movie script is about—his experiences in jail, going through trial. In one scene, he wrote how he was talking shit to the police, and they said, 'We going to fix you.' And they sent an inmate with a knife to kill Lloyd. But Lloyd ended up killing him. Then it shows that Lloyd covered his body with a sheet and had him in there for two days.

"I bullshit you not; I'm not lying," he says. "I think the script is called *Junglez*." ⚜

# FASHION CREDITS

**BREAK OPENER:** Vest and tuxedo shorts by H&M

**ASHANTI:** Styled by Deborah Waknin/The Wall Group and Jenni Lee; assisted by Holland Ingersoll. (Look 1) Pant by Valentino; gray vest by To the Max; jewelry by Robert Lee Morris. (Look 2) Black dress by D-Squared; shoes by Giuseppe Zanotti; jewelry by Lorraine Schwartz. (Look 3) Sequined cape by Kara Janx; shoes by Giuseppe Zanotti; earrings by Lorraine Schwartz. (Look 4) Jacket by JPG; leggings by American Apparel; belt by Valentino; boots by D-Squared; earrings by Lorraine Schwartz; ring by Stephen Dweck

**MELISSA DE SOUSA:** Styled by Joe eXclusive. (Look 1) Lace bra by Ravage; panties by Biatta; all shoes by Michael Antonio; earrings by 14k; rings by Romy M. (Look 2) Purple lace lingerie by Biatta; red bag by J.J. Winters; ring by 14k; earrings by Romy M.; bracelet stylist's own. (Look 3) Blue and white stripe by Biatta; vest by Guess; bracelets by Bebe; earrings stylist's own. (Look 4) Black lingerie by Biatta. (Look 5) Camisole by Baby Phat

**KHADIJAH AND MALIKA HAQQ:** Styled by Joe eXclusive. (Look 1) Gold sequined one-piece by Cherry Pie by Saleem; trenchcoat by Deener; leopard lingerie by Biatta; shoes by Michael Antonio; cuff by Romy M. (Look 2, phone booth) Lingerie by Biatta. (Look 3, car) Leopard lingerie by Biatta; black corset by Forplay. (Look 4) Zebra lingerie by Biatta. (Look 5, window) shoes by Fendi; polka-dot three-piece by Ravage

**ELISE NEAL:** Styled by Joe eXclusive. (Look 1) Sheer teddy by Forplay; shoes by Lanvin; earrings, pearl ring and necklace by 14k; black onyx ring by Ricardo Basta. (Look 2) Swimsuit by Lenny; blue stone ring by Ricardo Basta; necklace, earrings, bracelet and ring by14K; shoes by Roberto Cavalli. (Look 3) Swimsuit by Cherry Pie by Saleem; earrings by Ricardo Basta; shoes by Gucci. (Look 4) White swimsuit by Lenny; bracelets and earrings by 14k; ring by Ricardo Basta. (Look 5) Red lace lingerie by Dreamgirl; shoes by Dolce & Gabbana. (Look 6) Red and black lingerie by Forplay; shoes by Giambattista Valli

